UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

TRAVELERS PERSONAL INSURANCE COMPANY, ST. PAUL FIRE AND MARINE INSURANCE COMPANY, ST. PAUL MERCURY INSURANCE COMPANY, THE CHARTER OAK FIRE INSURANCE COMPANY, THE PHOENIX INSURANCE COMPANY, THE TRAVELERS HOME AND MARINE INSURANCE COMPANY, THE TRAVELERS INDEMNITY COMPANY, THE TRAVELERS INDEMNITY COMPANY OF AMERICA, THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, TRAVELERS CASUALTY AND SURETY COMPANY, TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, TRAVELERS PERSONAL SECURITY INSURANCE COMPANY, TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, THE STANDARD FIRE INSURANCE COMPANY, THE AUTOMOBILE INSURANCE COMPANY OF HARTFORD, CONNECTICUT, UNITED STATES FIDELITY AND GUARANTY COMPANY, FARMINGTON CASUALTY COMPANY, FIDELITY AND GUARANTY INSURANCE UNDERWRITERS, INC., TRAVCO INSURANCE COMPANY, TRAVELERS CASUALTY COMPANY OF CONNECTICUT, AND TRAVELERS PROPERTY CASUALTY INSURANCE COMPANY,

Plaintiffs,

v.

ELECTROSTIM MEDICAL SERVICES, INC., MARIO GARCIA, JR., DEAN MULEY, GRETCHEN DACEY-ZAVALIANOS, and YORLAN ALFONSO,

Defendants.

---------------------------------------------------------------

**MEMORANDUM & ORDER**
24-CV-8138 (MKB)

MARGO K. BRODIE, United States District Judge:

Plaintiff Travelers[1] commenced the above-captioned action on November 22, 2024, against Defendants Electrostim Medical Services, Inc. ("EMSI") and Mario Garcia, Jr., Dean Muley, Gretchen Dacey-Zavalianos, Yorlan Alfonso, and Rossana Cielo (the "Individual Defendants"). (Compl., Docket Entry No. 1.) Travelers alleged that Defendants wrongfully obtained New York State no-fault and workers' compensation insurance reimbursements for durable medical equipment ("DME") and related supplies and asserts claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c)–(d) ("RICO") and fraud pursuant to New York law, (*id.* ¶¶ 1, 546–613). Travelers sought declaratory and injunctive relief, (*id.* ¶¶ 614–24).[2]

---

[1] The Court refers to Plaintiffs, collectively, as "Travelers." Plaintiffs name in the Complaint Travelers Personal Insurance Company, St. Paul Fire and Marine Insurance Company, St. Paul Mercury Insurance Company, The Charter Oak Fire Insurance Company, The Phoenix Insurance Company, The Travelers Home and Marine Insurance Company, The Travelers Indemnity Company, The Travelers Indemnity Company of America, The Travelers Indemnity Company of Connecticut, Travelers Casualty and Surety Company, Travelers Casualty Insurance Company of America, Travelers Personal Security Insurance Company, Travelers Property Casualty Company of America, The Standard Fire Insurance Company, The Automobile Insurance Company of Hartford, Connecticut, and United States Fidelity and Guaranty Company.

In the Amended Complaint, Plaintiffs also name Farmington Casualty Company, Fidelity and Guaranty Insurance Underwriters, Inc., TravCo Insurance Company, Travelers Casualty Company of Connecticut, and Travelers Property Casualty Insurance Company.

The Court adopts the parties' convention of referring to Plaintiffs collectively as Travelers because, according to Plaintiffs' corporate disclosure statement, Travelers' companies are all wholly-owned subsidiaries of the Travelers Companies, Inc. or one of its subsidiaries. (Corp. Disclosure Statement, Docket Entry No. 40.)

[2] On February 3, 2025, Defendants moved to dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Travelers opposed the motion. (Defs.' Mot. to Dismiss, Docket Entry No. 22.) On September 13, 2025, the Court: (1) granted Defendants' motion to dismiss the RICO claims against Defendants and the common law fraud claim against the Individual Defendants; (2) denied Defendants' motion to dismiss the Complaint on the basis of insufficient licensure allegations, where Travelers alleged that EMSI was ineligible to collect payments because it did not possess the required licensing; and (3)

On November 10, 2025, Travelers filed an Amended Complaint[3] asserting: (1) that the Individual Defendants committed a substantive RICO violation under 18 U.S.C. § 1962(c) through the "EMSI Enterprise," (Am. Compl. ¶¶ 1072–89, Docket Entry No. 39); (2) that the Individual Defendants engaged in a RICO conspiracy under 18 U.S.C. § 1962(d) through the EMSI Enterprise, (*id.* ¶¶ 1090–96); (3) common law fraud claims against Defendants pursuant to New York law, (*id.* ¶¶ 1097–1106), Pennsylvania law, (*id.* ¶¶ 1107–16), Florida law, (*id.* ¶¶ 1117–27), and Georgia law, (*id.* ¶¶ 1128–38); and (4) a claim for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, (*id.* ¶¶ 1139–49).[4] Defendants move to dismiss the Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Travelers opposes the motion.[5] For the reasons explained below, the Court grants in part and denies in part Defendants' motion to dismiss and: (1) dismisses the RICO claims against Defendants; (2) dismisses the common law fraud claims against the Individual

granted Travelers leave to file an amended complaint (the "September 2025 Decision"). (Sep. 2025 Decision, Docket Entry No. 38.) *Travelers Pers. Ins. Co. v. Electrostim Med. Servs., Inc.*, No. 24-CV-8138, 2025 WL 2637674 (E.D.N.Y. Sep. 13, 2025).

[3] Travelers did not include Rossana Cielo as a defendant in the Amended Complaint.

[4] Travelers asserts that the Court has subject-matter jurisdiction pursuant to (1) 28 U.S.C. § 1331 based on federal question jurisdiction and (2) 28 U.S.C. § 1332 based on diversity of citizenship. (Am. Compl. ¶ 91.) *See, e.g.*, *Powell v. Maldonado*, No. 23-CV-826, 2025 WL 20087, at *1 (E.D.N.Y. Jan. 2, 2025) ("The amended complaint, like the original complaint, invokes both federal-question and diversity jurisdiction."), *aff'd*, No. 25-259, 2026 WL 904987 (2d Cir. Apr. 2, 2026) (summary order); *Gargano v. Univ. of Vermont Med. Ctr.*, No. 23-CV-13, 2023 WL 10669008, at *1 (D. Vt. July 17, 2023) (stating that, in a RICO action, the plaintiff asserted both federal question and diversity jurisdiction).

[5] (Defs.' Not. of Mot. to Dismiss ("Defs.' Mot."), Docket Entry No. 50; Defs.' Mem. in Supp. of Defs.' Mot. ("Defs.' Mem."), appended to Defs.' Mot., Docket Entry No. 50-1; Pls.' Opp'n to Defs.' Mot. ("Pls.' Opp'n"), Docket Entry No. 52; Defs.' Reply in Supp. of Defs.' Mot. ("Defs.' Reply"), Docket Entry No. 53.)

Defendants and (3) denies Defendants' motion to dismiss the state-law fraud claims against EMSI.

## I. Background

### a. Factual background

#### i. The parties

"Travelers underwrites automobile insurance in the State of New York."[6] (Am. Compl. ¶ 183.) Each of Travelers' companies is duly organized and exists under the laws of the State of

---

[6] The Court assumes the truth of the factual allegations in the Amended Complaint for the purpose of deciding Defendants' motion. The Court also considers documents attached to and incorporated by reference in the Amended Complaint and takes judicial notice of relevant state laws, state regulations, case law, and public documents that are not subject to dispute. *See* Fed. R. Evid. 201(b) (permitting judicial notice of facts "not subject to reasonable dispute"); *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (stating that "relevant matters of public record" are susceptible to judicial notice). In deciding a Rule 12(b)(6) motion, "the district court is normally required to look only to the allegations on the face of the complaint," but "may consider documents that 'are attached to the complaint,' 'incorporated in it by reference,' 'integral' to the complaint, or the proper subject of judicial notice." *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)); *see United States ex. rel. Henig v. Amazon.com, Inc.*, 177 F.4th 156, 163 (2d Cir. 2026) (same); *Pearson v. Gesner*, 125 F.4th 400, 406 (2d Cir. 2025) (same); *Lynch v. Dep't of Ed. of N.Y.*, 822 F. Supp. 3d 258, 275 (E.D.N.Y. 2026) ("On a motion to dismiss, courts are constrained in their review to the four corners of the complaint, the documents attached thereto, those that are integral to the complaint or incorporated by reference, and those facts or documents of which the court can take judicial notice." (internal quotation marks omitted)). In addition, "[i]t is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998); *see Hudson Shore Assocs. Ltd. P'ship v. New York*, 139 F.4th 99, 104 n.1 (2d Cir. 2025) (citations omitted); *Goe v. Zucker*, 43 F.4th 19, 29 (2d Cir. 2022) (first citing *Alaska v. Am. Can Co.*, 358 U.S. 224, 226–27 (1959); and then citing *Kavowras v. N.Y. Times Co.*, 328 F.3d 50, 57 (2d Cir. 2003)); *Williams v. N.Y.C. Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020) (district courts "may consider public records that may be judicially noticed in ruling on motions"); *Perkins v. Solomon*, 821 F. Supp. 3d 395, 406 (E.D.N.Y. 2026) (noting the court may take judicial notice of public records in deciding a motion to dismiss, although the "documents subject to judicial notice cannot be used at the motion to dismiss stage for the truth of the matters asserted therein," "only . . . to establish the fact that they, or the proceedings they reflect, exist" (internal quotation marks omitted)).

Connecticut,[7] has its principal place of business in Hartford, Connecticut, and is authorized to conduct business in New York, Florida, Georgia, and Pennsylvania. (*Id.* ¶¶ 38–40.) Travelers' allegations pertain to claims submitted for various state no-fault or workers compensation insurance benefits for its insureds who lived in New York or were covered by automobile or workers' compensation insurance policies that Travelers issued during the relevant period. (*Id.* ¶ 94.) EMSI[8] is a registered Florida corporation with its principal place of business in Tampa, Florida, that received authorization to conduct business in the State of New York on or about May 14, 2012, and remains active in New York as a foreign business corporation delivering DME to patients residing in the state, including the five boroughs of New York City. (*Id.* ¶¶ 2, 41–42; 95–96.) Garcia founded EMSI in 1995 and is the chairman and owner. (*Id.* ¶¶ 48, 260.) He "compiled a team of managers to participate in the operation and management of EMSI, including, but not limited to, the executive team comprised of Muley, Dacey-Zavalianos, and Alfonso." (*Id.* ¶ 933.)

On or about March 25, 2022, EMSI enrolled as a Medicaid Managed Care network provider in New York State's Medicaid Program. (*Id.* ¶ 97.) "EMSI specifically targeted New York as part of a nationwide market," (*id.* ¶ 99), and "reported in its Medicare application that [thirty-five percent] of its business is derived from New York" and "that it only does business through the U.S. mail," (*id.* ¶¶ 100, 1037).

---

[7] The only exception is Fidelity and Guaranty Insurance Underwriters, Inc., which is duly organized and exists under the laws of the State of Wisconsin. (Am. Compl. ¶ 39.)

[8] EMSI is owned by Garcia and is operated by the Individual Defendants, all of whom reside in and are citizens of Florida. (*Id.* ¶¶ 1, 47, 60, 69, 80.)

**ii. Defendants' devices and recommended usage**

EMSI "manufacturers interferential stimulation and transcutaneous electrical nerve stimulation ('TENS') devices and neuromuscular electrical stimulation ('NMES') devices (collectively, 'TENS/NMES Devices') and provides these devices and related supplies and services to patients throughout numerous states, including New York." (*Id.* ¶ 2; *see id.* ¶¶ 263–75.)

The manuals for the EMSI's TENS/NMES Devices caution patients that "[f]ederal law requires a prescription from [their] physician before use of th[e] product" and, consistent with this warning, the standard of care and clinical guidelines warn that the devices "should be used only under the continued supervision of a physician." (*Id.* ¶¶ 318, 321 (emphasis omitted).) Medical providers prescribe TENS/NMES Devices "for pain relief or to treat muscle weakness." (*Id.* ¶ 285.) Ordinarily, the use of a TENS/NMES Device "start[s] with a [thirty-day] trial with documentation of efficacy justifying continued use." (*Id.* ¶ 296.)

After receiving an initial TENS/NMES device, patients are not provided additional supplies automatically or on a subscription basis; rather, patients are given supplies only when they need or want them. (*Id.* ¶ 284.) Patients are also "provided with replenishment items, such as chargers or lead wires, only when the equipment is damaged or worn out and there is a documented need for the replacement." (*Id.* ¶ 288.) The "prescribing provider must provide regular supervision and identify the metrics to warrant ongoing use of the TENS/NMES unit" and continued use "should be based on objective documented efficacy and functional improvement." (*Id.* ¶¶ 307–08.)

**iii. Alleged fraudulent scheme**

Travelers allege that EMSI through the Individual Defendants submitted hundreds of false and fraudulent claims to Travelers for "unnecessary, medically worthless, and fraudulently

charged DME" and replenishment supplies "purportedly provided to patients" whose employers were Travelers insured or who were eligible for coverage under automobile insurance policies. (*Id.* ¶¶ 1, 13.) According to Travelers, EMSI dispensed these items to patients who neither needed nor wanted them, automatically replenished supplies that were not legitimately prescribed, and routinely billed for TENS Devices far beyond the period of reasonable and necessary use. (*Id.* ¶¶ 292–583.) Travelers contends that EMSI's bills were not eligible for reimbursement because they were: (1) fraudulently prescribed; and/or (2) improperly billed. (*See generally* Am. Compl.)

Travelers also alleges that EMSI's "executive team," of which the Individual Defendants are members, created the "Letter of Medical Necessity" ("LOMN") form to justify the fraudulently prescribed or improperly billed supplies. (*Id.* ¶ 107.) The "LOMNs created by the executive team were the central mechanism of the Defendants' fraudulent scheme" because it was "designed to prescribe the devices and related accessories to Travelers' claimants, in perpetuity, thereby enabling the Defendants to bill Travelers indefinitely through EMSI." (*Id.* ¶ 7.) To implement this scheme, Travelers alleges that the executive team "established the mandatory policy whereby the LOMN functioned as the requisite prescription that EMSI demanded prior to shipping any devices to claimants," (*id.* ¶ 110), and created and enforced an internal protocol, "which mandated that their sales force (who are non-healthcare professionals) would unlawfully complete the LOMN," (*id.* ¶ 9).

## II. Discussion

### a. Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court "must 'construe [the complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiff['s] favor.'" *Singh v. Deloitte*

*LLP*, 123 F.4th 88, 93 (2d Cir. 2024) (quoting *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021)); *see also Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020) ("[The Second Circuit] review[s] *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002))). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Yerkyn v. Yakovlevich*, 164 F.4th 224, 231 (2d Cir. 2026) (quoting *id.*); *see Miller v. McDonald*, 180 F.4th 420, 426 (2d Cir. 2026) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678); *see Knapp v. Barclays PLC*, 171 F.4th 166, 170 (2d Cir. 2026) (quoting same); *Carruthers v. Colton*, 153 F.4th 169, 179 (2d Cir. 2025) (quoting same); *Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024) (quoting *Matson*, 631 F.3d at 63); *see also Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 544 (2d Cir. 2024) ("[T]he plaintiff's allegations must enable the court to reasonably infer that the defendant is liable for the alleged misconduct." (citing *Iqbal*, 556 U.S. at 678)), *cert. denied*, 146 S. Ct. 880 (2025); *Emilee Carpenter, LLC v. James*, 107 F.4th 92, 99 (2d Cir. 2024) ("[S]urviv[ing] a motion to dismiss . . . requires 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" (quoting same)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *see Roe*, 91 F.4th at 651 ("Although all factual allegations contained in the

complaint are assumed to be true, this rule does not extend 'to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" (quoting *id.*)).

**b. Some of Travelers' claims are time-barred, but equitable tolling applies**

Defendants argue first, that the Court should dismiss the Amended Complaint because Travelers' claims are based in substantial part on conduct occurring outside the statute of limitations. In support, Defendants contend that some of Travelers' claims are time-barred, as some of the challenged bills are dated after the limitations period expired. (Defs.' Mem. 30 (citing *Allstate Ins. Co. v. CPM Med Supply Inc.*, No. 23-CV-5864, 2024 WL 3949968 (E.D.N.Y. Aug. 27, 2024)).) Second, Defendants contend that equitable tolling is inapplicable because Travelers does not "offer particularized factual allegations showing when [Travelers] discovered the wrong (or was reasonably diligent) and concrete acts of concealment by [D]efendants." (*Id.*) In support, Defendants argue that Travelers' evidence of fraudulent concealment includes claims submitted by EMSI "in the ordinary course of its business as a DME supplier fulfilling patient prescriptions from their healthcare provider." (Defs.' Reply 12.)

Travelers argues first, that its claims are not barred because the "bulk of damages claimed" fall within the statute of limitations. (Pls.' Opp'n 33.) Second, Travelers contends that its RICO claims are not barred because equitable tolling applies. (*Id.* at 31–34.) In support, Travelers argues that Defendants engaged in fraudulent concealment by: (1) refusing to comply with Travelers' verification requests; (2) submitting fraudulent sworn statements in other litigation actions asserting similar claims; (3) removing Garcia's name from bills submitted to Travelers "to conceal his ongoing involvement in the scheme"; (4) "directly lying to Travelers about EMSI's battery sales"; (5) providing inaccurate Rule 16 initial disclosures in this action; and (6) "providing incomplete discovery responses and withholding documents in this

litigation." (*Id.* at 32.) Third, Travelers argues that it would be inappropriate for the Court to dismiss claims as barred by the statute of limitations on a motion to dismiss because Travelers has sufficiently pleaded fraudulent concealment and therefore "there is 'at least a triable issue of fact as to whether fraudulent concealment tolled the statute of limitations' [and] the case should be heard on the merits." (*Id.* at 33 (quoting *Demchik v. Gen. Motors Corp.*, 821 F.2d 102, 106 (2d Cir. 1987)).)

**i. Statute of limitations**

"Civil RICO claims are subject to a four-year statute of limitations, which begins to run 'when the plaintiff discovers or should have discovered the RICO injury.'" *Nastasi & Assocs., Inc. v. Bloomberg, L.P.*, No. 24-545, 2026 WL 2149800, at *2 (2d Cir. July 27, 2026) (summary order) (first citing *Rotella v. Wood*, 528 U.S. 549, 552 (2000); and then quoting *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 58 (2d Cir. 1998)); *Zappin v. Cooper*, No. 23-671, 2024 WL 3250475, at *1 (2d Cir. July 1, 2024) (summary order) ("Civil RICO claims are subject to a four-year statute of limitations." (citing *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 361 (2d Cir. 2013))); *Cohen*, 711 F.3d at 361 (stating that a civil RICO claim must be brought within four years of accrual, which occurs "when the plaintiff discovers or should have discovered the RICO injury" (first quoting *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d at 58; and then citing *Rotella*, 528 U.S. at 555)).

Under New York law, a claim "based upon fraud" must be commenced either "six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it," whichever is greater. N.Y. C.P.L.R. § 213(8); *Meyer v. Seidel*, 89 F.4th 117, 130–31 (2d Cir. 2023) (quoting *id.*).

Under Florida law, a claim for fraud must be brought within four years. Fla. Stat. § 95.11(3)(i); *Otero v. Newrez LLC*, No. 21-12990, 2022 WL 3155414, at *1 (11th Cir. Aug. 8, 2022) (per curiam) (citing *id.*); *Horn v. Est. of Camacho*, 817 F. App'x 872, 875 (11th Cir. 2020) (citing same); *Weatherly v. Pershing, L.L.C.*, 945 F.3d 915, 919 (5th Cir. 2019) (citing same). A claim for fraud begins to run "from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence." Fla. Stat. § 95.031(2)(a); *Otero*, 2022 WL 3155414, at *1 (quoting *id.*); *Horn*, 817 F. App'x at 875 (citing same).

Under Pennsylvania law, a claim for fraud must be brought within two years. 42 Pa. Cons. Stat. § 5524(7); *Prime Energy & Chem. LLC v. Tucker Arensberg, P.C.*, No. 23-2169, 2024 WL 4441492, at *2 (3d Cir. Oct. 8, 2024) (citing *id.*). A claim for fraud begins to run when a plaintiff "learned or should have learned, through the exercise of due diligence, that they have a cause of action." *LabMD Inc. v. Boback*, 47 F.4th 164, 182 (3d Cir. 2022) (quoting *Beauty Time, Inc. v. VU Skin Sys., Inc.*, 118 F.3d 140, 148 (3d Cir. 1997)); *Prime Energy & Chem.*, 2024 WL 4441492, at *2 ("The two-year statute of limitations starts to run as soon as 'the cause of action accrued[.]'" (alteration in original) (quoting 42 Pa. Cons. Stat. § 5502(a))).

Under Georgia law, a claim for fraud must be brought within four years. O.C.G.A. § 9-3-31; *Everson v. Coca-Cola Co.*, No. 24-11058, 2024 WL 5116429, at *2 (11th Cir. Dec. 16, 2024) (per curiam) (citing *id.*), *cert. denied*, 146 S. Ct. 96 (2025), *reh'g denied*, 146 S. Ct. 910 (2025); *McCurley v. Wells Fargo Bank N.A.*, No. 24-10243, 2024 WL 3858914, at *2 (11th Cir. Aug. 19, 2024) (per curiam) (citing same), *cert. denied*, 145 S. Ct. 1175 (2025).

The Court finds that many of Travelers' claims were filed after the expiration of the statutes of limitations. For the RICO claims based on conduct that took place before November

22, 2020, the claims are barred by the statute of limitations. For fraud claims: (1) under New York law, claims before November 22, 2018 are barred by the statute of limitations; (2) under Florida law, claims before November 22, 2020 are barred by the statute of limitations; (3) under Pennsylvania law, claims before November 22, 2022 are barred by the statute of limitations; and (4) under Georgia law, claims before November 22, 2020 are barred by the statute of limitations. Travelers acknowledges some of its claims fall outside the statutes of limitations in its opposition, stating Travelers' "*bulk* of damages claimed" fall within the statute of limitations, but not all. (Pls.' Opp'n 33 (emphasis added).) Travelers also claims that the doctrine of equitable tolling tolls the statutes of limitations for the expired civil RICO claims.

**ii. Equitable tolling**

The doctrine of equitable tolling "allows a district court to toll the statute of limitations." *Polanco v. U.S. Drug Enf't Admin.*, 158 F.3d 647, 655 (2d Cir. 1998); *see Doe v. United States*, 76 F.4th 64, 71 (2d Cir. 2023) ("Equitable tolling is a doctrine that permits courts to extend a statute of limitations on a case-by-case basis to prevent inequity." (quoting *Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir. 2000))). For equitable tolling to apply, a litigant must demonstrate "[1] that some extraordinary circumstance stood in her way and [2] that she has been pursuing her rights diligently." *Saint-Jean v. Emigrant Mortg. Co.*, 129 F.4th 124, 142 (2d Cir. 2025) (alteration and internal quotation marks omitted) (quoting *Doe*, 76 F.4th at 71), *cert. denied*, 146 S. Ct. 1501 (2026); *Watson v. United States*, 865 F.3d 123, 132 (2d Cir. 2017) (quoting *Mottahedeh v. United States*, 794 F.3d 347, 352 (2d Cir. 2015)); *see also Doe*, 76 F.4th at 71 (noting that a party seeking equitable tolling "must demonstrate . . . first, that some extraordinary circumstance stood in [her] way and second that [she] has been pursuing [her] rights diligently" (alterations in original) (citation and internal quotation marks omitted)); *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012) (noting that a showing of reasonable diligence throughout

the period a plaintiff seeks to toll and that some extraordinary circumstance prevented a plaintiff from filing his action in a timely manner are prerequisites for equitable tolling); *Polanco*, 158 F.3d at 655 ("To avail himself of this doctrine, the plaintiff must show that he 'pass[ed] with reasonable diligence through the period [he] seeks to have tolled.'" (alterations in original) (quoting *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996))). "Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." *Watson*, 865 F.3d at 133 (quoting *Wallace v. Kato*, 549 U.S. 384, 396 (2007)); *see Clark v. Hanley*, 89 F.4th 78, 92 (2d Cir. 2023) ("In 'rare and exceptional circumstances,' the statute of limitations governing a § 1983 claim may be subject to equitable tolling, 'where necessary to prevent unfairness to a plaintiff who is not at fault for her lateness in filing.'" (first quoting *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005); and then quoting *Gonzalez v. Hasty*, 651 F.3d 318, 322 (2d Cir. 2011))); *Jones v. City of New York*, 846 F. App'x 22, 24 (2d Cir. 2021) (stating that the statute of limitations for a Section 1983 claim may be equitably tolled "only in rare and exceptional circumstances" (internal quotation marks omitted)); *McPartlan-Hurson v. Westchester Cmty. Coll.*, 804 F. App'x 41, 43–44 (2d Cir. 2020) (rejecting the party's late filing because equitable tolling of exhaustion time applies only "in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights" (quoting *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003))); *Berrios v. Henri*, No. 18-CV-4194, 2021 WL 6197052, at *3 (E.D.N.Y. Dec. 30, 2021) (quoting same). "The law prohibits a judge from exercising her discretion where these two elements are missing." *Doe*, 76 F.4th at 71.

Courts will equitably toll statutes of limitations for fraudulent concealment if: "(1) the defendant concealed the existence of the cause of action from the plaintiff; (2) the concealment

prevented plaintiff's discovery of the claim within the limitations period; and (3) the plaintiff's ignorance of the claim did not result from a lack of diligence." *Saint-Jean*, 129 F.4th at 143 (citing *New York v. Hendrickson Bros.*, 840 F.2d 1065, 1083 (2d Cir. 1988)); *Fromageot v. Britt*, No. 21-CV-1165, 2025 WL 3470473, at *8 (D. Conn. Dec. 3, 2025) (quoting *id.*), *appeal dismissed*, No. 26-26 (2d Cir. June 18, 2026); *see Koch*, 699 F.3d at 157 (stating that a plaintiff must show: "(1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's 'discovery of the nature of the claim within the limitations period'; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled" (quoting *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 543 (2d Cir. 1999))). "A plaintiff can prove concealment by showing 'either that the defendant took affirmative steps to prevent the plaintiff's discovery of his claim or injury or that the wrong itself was of such a nature as to be self-concealing.'" *Saint-Jean*, 129 F.4th at 143 (quoting *Hendrickson Bros.*, 840 F.2d at 1083); *see SL-x IP S.à.r.l. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, Nos. 21-2697, 21-2699, 2023 WL 2620041, at *3 (2d Cir. Mar. 24, 2023) (summary order) (quoting same); *In re Google Digit. Advert. Antitrust Litig.*, 721 F. Supp. 3d 230, 271 (S.D.N.Y. 2024) (quoting same).

Rule 9(b) of the Federal Rules of Civil Procedure requires that a party alleging fraud or fraudulent concealment "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *Spencer v. Lab'y Corp. of Am. Holdings*, No. 19-CV-4927, 2024 WL 3675855, at *15 (E.D.N.Y. Aug. 6, 2024) ("A claim of fraudulent concealment must be pled with particularity, in accordance with the heightened pleading standards of Fed. R. Civ. P. 9(b)." (quoting *Hinds Cty. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 520 (S.D.N.Y. 2009))), *aff'd*, No. 24-2363, 2025 WL 2779015 (2d Cir. Sep. 30, 2025) (summary order). "Generalized or

conclusory allegations of fraudulent concealment are insufficient to toll a statute of limitations." *Singh v. Wells*, 445 F. App'x 373, 378 (2d Cir. 2011) (citing *Armstrong v. McAlpin*, 699 F.2d 79, 90 (2d Cir. 1983)). The "[Second] Circuit has explicitly clarified that 'fraudulent concealment is not essential to equitable tolling,'" meaning, the application of the doctrine of equitable tolling is not limited to causes of fraudulent concealment. *Saint-Jean*, 129 F.4th at 143 (quoting *Valdez ex rel. Donely v. United States*, 518 F.3d 173, 182 (2d Cir. 2008)).

Travelers plausibly pleads the required elements of fraudulent concealment by alleging that Defendants (1) concealed the alleged fraudulent billing from Travelers, (2) prevented Travelers from discovering the fraud within the limitations period by verifying each claim pursuant to New York Insurance Law § 403(d)[9] and, therefore, Travelers' reliance on these verified claims were reasonable, and (3) Travelers exercised due diligence in attempting to discover the fraud. *See Saint-Jean*, 129 F.4th at 142.

**1. Concealment of the alleged scheme**

Travelers lists various actions by Defendants of the conduct that concealed the alleged scheme including failing to comply with verifications requests, removing Garcia's name from bills submitted to Travelers "to conceal his ongoing involvement in the scheme," and lying to

[9] New York Insurance Law § 403(d) provides:

> All applications for commercial insurance, individual, group or blanket accident and health insurance and all claim forms . . . contain a notice in a form approved by the superintendent that clearly states in substance the following: "Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation."

Travelers regarding whether EMSI sold batteries separately. (*See* Pls.' Opp'n 32; Am. Compl. ¶¶ 1045–61.)

Defendants' main argument against fraudulent concealment is that Travelers fails to identify "specifics regarding why these particular claims are fraudulent" and cites to broad allegations in the Amended Complaint that could be part of a routine billing dispute. (Defs.' Reply 12 (citing Pls.' Opp'n 32–34).) However, Defendants ignore the specific information provided by Travelers, including that the alleged fraud was not discovered until just before the filing of the Complaint in this action on November 22, 2024, and the allegations that Defendants submitted materially false information. (*See* Pls.' Opp'n 32.) Defendants contend that this evidence does not constitute fraudulent intent because it is no more than claims submitted by EMSI "in the ordinary course of its business." (Defs.' Reply 12.) However, Travelers' allegations of fraud are not unreasonable because the billing statements allegedly contained materially false information not visible on the face of the billing statements. *See Gov't Emps. Ins. Co. v. Landow*, No. 21-CV-1440, 2022 WL 939717, at *7 (E.D.N.Y. Mar. 29, 2022) (finding it "is reasonable that [the p]laintiffs were not immediately aware of the fraudulent bills because the insurance claims were allegedly intended to conceal the fraudulent activity"); *see also Gov't Emps. Ins. Co. v. Erlikh*, No. 16-CV-7120, 2019 WL 1487576, at *6 (E.D.N.Y. Feb. 28, 2019) (finding the knowledge element of fraud was met because GEICO alleged in detail that the defendants submitted fraudulent claims as part of a scheme "to bill GEICO and the New York automobile insurance industry for millions of dollars in no-fault insurance benefits they were never entitled to receive" (internal citation omitted)); *Gov't Emps. Ins. Co. v. Ajudua*, No. 15-CV-5199, 2018 WL 7252961, at *5 (E.D.N.Y. Dec. 18, 2018) (finding that the plaintiffs sufficiently pleaded the knowledge and intent to defraud elements of fraud by alleging "in detail

and with specificity, that [the d]efendants not only knew that they were submitting fraudulent claims for medical services to GEICO, but that they acted intentionally, as part of a calculated scheme to profit from payment of the claims, and that they actively misrepresented and concealed information to prevent plaintiffs from discovering that the claims were fraudulent"), *report and recommendation adopted sub nom. Gov't Emps. Ins. Co. v. Lurie*, 2019 WL 276201 (E.D.N.Y. Jan. 22, 2019).

Second, Travelers sufficiently pleads that EMSI concealed the fraud because EMSI verified each claim according to N.Y. Insurance Law § 403 and the submitted bills certifying that EMSI was eligible for reimbursement, and this prevented their discovery during the statutory period. (*See* Am. Compl. ¶¶ 1062–70.) Courts have found reasonable insurance companies' reliance on submitted bills that purport to be in accordance with the law. *See Allstate Ins. Co. v. Strobeck*, No. 24-CV-1698, 2024 WL 5245543, at *6 (E.D.N.Y. Dec. 17, 2024) (finding reasonable Allstate's reliance on the claims submitted by the defendants); *State Farm Mut. Auto. Ins. Co. v. A to Z Med. Care P.C.*, No. 17-CV-4443, 2019 WL 2489901, at *4 (E.D.N.Y. June 7, 2019) (finding that the "plaintiffs sufficiently allege[d] reasonable reliance by explaining State Farm's duties under the no-fault laws, and by claiming that State Farm made payments in reliance on the fact that the bills appeared, on their face, to have been submitted in accordance with the law"); *Allstate Ins. Co. v. Williams*, No. 13-CV-2893, 2015 WL 5560543, at *4 (E.D.N.Y. Aug. 28, 2015) (holding that the plaintiff alleged common law fraud and observing that "insurers justifiably may rely on claims forms submitted in support of reimbursement"), *report and recommendation adopted*, 2015 WL 5560546 (E.D.N.Y. Sep. 21, 2015).

Third, Travelers sufficiently pleads that they exercised due diligence in search of fraudulent conduct by continuously inquiring into the billing statements and requesting

verification. (*See* Am. Compl. ¶¶ 1053, 1059–61.) As a result, the equitable tolling doctrine of fraudulent concealment tolls the limitations period for Travelers' RICO claims. In addition, because Travelers' common-law fraud claims arise from the same facts as its RICO claims, the equitable tolling doctrine of fraudulent concealment also tolls the limitations period for Travelers' common-law fraud claims. *See Sita v. Kurn Hattin Homes for Child.*, No. 25-CV-239, 2026 WL 323272, at *4 (D. Vt. Feb. 6, 2026) (stating that equitable tolling applies to all of the plaintiff's claims where the claims arise from the same material facts); *Corns v. Good Samaritan Hosp. Med. Ctr.*, No. 23-CV-93, 2024 WL 4008244, at *6 n.10 (E.D.N.Y. Aug. 30, 2024) (stating that "the equitable tolling issues appear to be identical for all of [the plaintiff's] claims" where her claims arise out of the "factual circumstances").

**c. Substantive RICO and RICO conspiracy claims**

Travelers alleges (1) a substantive RICO claim and (2) a RICO conspiracy claim against the Individual Defendants. As discussed below, the Court finds that Travelers fails to plead its RICO claims, and the Court dismisses the RICO claims against the Individual Defendants. In addition, because the Court dismisses the substantive RICO claim, the Court also dismisses the RICO conspiracy claim.

"RICO creates a private cause of action for '[a]ny person injured in his business or property by reason of a violation of section 1962' of RICO." *Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018) (alteration in original) (quoting 18 U.S.C. § 1964(c)); *see also State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 95 (2d Cir. 2024) (similar); *Laydon v. Coöperatieve Rabobank U.A.*, 55 F.4th 86, 100 (2d Cir. 2022) (similar); *Petroff Amshen LLP v. Alfa Rehab PT PC*, No. 21-847, 2022 WL 480475, at *2 (2d Cir. Feb. 17, 2022) (summary order) (similar). The statute "imposes liability on individuals working for an 'enterprise' that commits certain predicate crimes that amount to a

'pattern of racketeering activity.'" *Reich v. Lopez*, 858 F.3d 55, 59 (2d Cir. 2017) (quoting 18 U.S.C. §§ 1962, 1964); *see Yousefzadeh v. Johnson & Johnson Consumer Inc.*, 184 F.4th 130, 155 (2d Cir. 2026) (quoting 18 U.S.C. §§ 1962(c)–(d)); *Tri-Borough NY Med.*, 120 F.4th at 95 ("RICO makes it unlawful, *inter alia*, 'for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt' or to conspire to do so." (alteration in original) (quoting same)).

To establish a substantive RICO claim, a plaintiff must plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Yousefzadeh*, 184 F.4th at 155 (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)); *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) ("To establish a civil RICO claim, a plaintiff must allege '(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity,' as well as 'injury to business or property as a result of the RICO violation.'" (quoting *Anatian v. Coutts Bank (Switz.) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999))); *see Curtis v. Greenberg*, Nos. 22-252, 22-346, 2023 WL 6324324, at *1 (2d Cir. Sep. 29, 2023) (summary order) (quoting *Lundy*, 711 F.3d at 119); *Butcher v. Wendt*, 975 F.3d 236, 241 (2d Cir. 2020) ("To state a claim of a substantive RICO violation under [section] 1962(c), a plaintiff must allege, among other things, two or more predicate acts 'constituting a pattern' of 'racketeering activity.'" (quoting *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018))); *Williams*, 889 F.3d at 123–24 ("To sustain a RICO claim under 18 U.S.C. § 1962(c), a plaintiff must show '(1) that the defendant (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5) directly or indirectly invests in, or maintains an[] interest in, or participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce.'" (quoting *Moss v.*

*Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983))). "The Supreme Court has interpreted [the] phrase ['pattern of racketeering activity'] to require both that the RICO predicates pose a threat of continuous criminal activity and that they be related to each other." *Reich*, 858 F.3d at 59 (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)); *see United States v. Torres*, 124 F.4th 84, 95 (2d Cir. 2024) ("[The Second Circuit] ha[s] recognized that the predicate acts constituting the pattern of racketeering activity 'must be related and amount to or pose a threat of continued criminal activity.'" (quoting *United States v. Burden*, 600 F.3d 204, 216 (2d Cir. 2010))), *cert. denied*, 146 S. Ct. 161 (2025), and *cert. denied sub nom. Owen v. United States*, 146 S. Ct. 162 (2025). In addition, "a plaintiff must also establish that the underlying § 1962 RICO violation was 'the proximate cause of his injury.'" *Empire Merchs.*, 902 F.3d at 140 (quoting *UFCW Loc. 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 132 (2d Cir. 2010)); *see also Laydon*, 55 F.4th at 100 ("To establish a RICO claim, a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of [section] 1962." (quoting *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013))); *Com. Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 380 (2d Cir. 2001) ("[A] plaintiff must plead (1) the defendant's violation of [section] 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation.").

"The RICO statute defines 'enterprise' as 'any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'" *D'Addario v. D'Addario*, 901 F.3d 80, 100 (2d Cir. 2018) (quoting 18 U.S.C. § 1961(4)); *see Curtis*, 2023 WL 6324324, at *1 (quoting same). A RICO enterprise can consist of "'a group of persons associated together for a common purpose of engaging in a

course of conduct,' the existence of which is proven 'by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)); *O'Neill v. NYU Langone Hosps.*, No. 23-CV-4679, 2024 WL 4216501, at *8 (E.D.N.Y. Sep. 17, 2024) (quoting *id.*), *motion for relief from judgment denied sub nom. O'Neill v. NYU Langone Hosp. Long Island*, 2025 WL 3002035 (E.D.N.Y. Oct. 27, 2025), *appeal filed*, 25-2978 (2d Cir. Nov. 24, 2025); *King v. Wang*, No. 14-CV-7694, 2020 WL 6875403, at *18 (S.D.N.Y. Nov. 23, 2020) (quoting same). "[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). "A corporate entity can be sued as a RICO 'person' or named as a RICO 'enterprise,' but the same entity cannot be *both* the RICO person and the enterprise." *U1it4less, Inc. v. Fedex Corp.*, 871 F.3d 199, 205 (2d Cir. 2017) (first quoting 18 U.S.C. §§ 1961(3), (4); and then citing *Anatian*, 193 F.3d at 89); *see Lynn v. McCormick*, 760 F. App'x 51, 53 (2d Cir. 2019) (quoting *id.*); *Cruz*, 720 F.3d at 120 ("As we have long recognized, the plain language and purpose of the [RICO] statute contemplate that a *person* violates the statute by conducting an *enterprise* through a pattern of criminality. It thus follows that a corporate person cannot violate the statute by corrupting itself." (citing *Bennett v. U.S. Tr. Co. of N.Y.*, 770 F.2d 308, 315 (2d Cir. 1985))); *see also First Cap. Asset Mgt.*, 385 F.3d at 173 ("The [RICO] enterprise must be separate from the pattern of racketeering activity and distinct from the person conducting the affairs of the enterprise." (citations omitted)). A "'RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant,' that

consists, in other words, of a corporate defendant 'corrupting itself,'" is insufficient to meet this distinctiveness requirement. *U1it4less*, 871 F.3d at 206 (first quoting *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994); and then quoting *Cruz*, 720 F.3d at 120); *see Cruz*, 720 F.3d at 121 ("[The Second Circuit] ha[s] long since rejected the idea that a RICO enterprise may consist 'merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant' . . . ." (quoting *Riverwoods Chappaqua Corp.*, 30 F.3d at 344)); *Premium Merch. Funding 26, LLC v. Sonata Constr. LLC*, No. 25-CV-1086, 2026 WL 867165, at *12 n.7 (S.D.N.Y. Mar. 30, 2026) (stating that an "enterprise" cannot be established where the allegation is that the individual defendant "was in an enterprise consisting only of itself or its own employees"); *Palomino Master Ltd. v. Credit Suisse Grp. AG*, No. 25-CV-8264, 2026 WL 848394, at *11 (S.D.N.Y. Mar. 26, 2026) ("Where alleged RICO actors 'operate within a unified corporate structure' and are 'guided by a single corporate consciousness,' the enterprise is not distinct from the persons." (quoting *U1it4less*, 871 F.3d at 206–09)); *Spig Indus., LLC v. Novac Equities LLC*, No. 23-CV-8667, 2025 WL 3643955, at *11 (S.D.N.Y. Oct. 22, 2025) ("[I]f a corporate defendant can be liable for participating in an enterprise comprised only of its agents — even if those agents are separately incorporated legal entities — then RICO liability will attach to any act of corporate wrong-doing and the statute's distinctness requirement will be rendered meaningless." (quoting *U1it4less*, 871 F.3d at 205–06)), *report and recommendation adopted sub nom. Spig Indus., LLC v. Advantage Platform Servs., Inc.*, 2025 WL 3642396 (S.D.N.Y. Dec. 15, 2025).

In addition to alleging an "enterprise," to sustain a civil RICO claim, a plaintiff must plausibly allege a pattern of racketeering activity, which consists of (1) at least two predicate acts, "the last of which occurred within ten years . . . after the commission of a prior act of

racketeering activity," that (2) "amount to or pose a threat of continued criminal activity." *Grace Int'l Assembly of God v. Festa*, 797 F. App'x 603, 605 (2d Cir. 2019) (alteration in original) (first quoting 18 U.S.C. § 1961(5); and then quoting *Cofacrèdit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999)); *see Sullivan v. UBS AG*, 149 F.4th 206, 222 (2d Cir. 2025) (stating that a plaintiff "need[s] to allege at least two predicate acts of wire fraud"); *One World, LLC v. Onoufriadis*, No. 21-374, 2021 WL 4452070, at *2 (2d Cir. Sep. 29, 2021) (summary order) (quoting 18 U.S.C. § 1961(5)); *Butcher*, 975 F.3d at 241 ("To state a claim of a substantive RICO violation under [section] 1962(c), a plaintiff must allege, among other things, two or more predicate acts 'constituting a pattern' of 'racketeering activity.'" (quoting *Williams*, 889 F.3d at 124)). "[A]llegations of frivolous, fraudulent, or baseless litigation activities — without more — cannot constitute a RICO predicate act." *Tri-Borough NY Med.*, 120 F.4th at 98 n.14 (quoting *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018)); *see Corsini v. Reich*, No. 25-2710, 2026 WL 1397229, at *1 (2d Cir. May 19, 2026) (summary order) (quoting same); *Dees v. Knox*, No. 24-1574, 2025 WL 485019, at *2 (2d Cir. Feb. 13, 2025) (summary order) (quoting same), *cert. denied*, 146 S. Ct. 201 (2025).

Mail fraud is a RICO predicate act. *See* 18 U.S.C. § 1961(1) (setting forth a list of predicate acts, including mail fraud); *Aghaeepour v. N. Leasing Sys., Inc.*, No. 25-548, 2026 WL 1183399, at *2 (2d Cir. Apr. 29, 2026) (summary order) (stating that predicate acts include mail fraud and wire fraud); *United States v. Capers*, 20 F.4th 105, 121 (2d Cir. 2021) (stating that RICO covers mail fraud); *Bascuñán v. Elsaca*, 927 F.3d 108, 120–21 (2d Cir. 2019) (explaining mail fraud is a predicate act for civil RICO claims). "The essential elements of mail and wire fraud are (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme." *United States v. Runner*, 143 F.4th 146, 154 (2d

Cir. 2025) (quoting *United States v. Weaver*, 860 F.3d 90, 94 (2d Cir. 2017)); *Bascuñán*, 927 F.3d at 122 ("There are three 'essential elements' to mail or wire fraud: '(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme.'" (quoting same)); *see Gov. Emps. Ins. Co. v. Infinity Health Prods., Ltd.*, No. 10-CV-5611, 2012 WL 1427796, at *7 (E.D.N.Y. Apr. 6, 2012) ("Pleading mail fraud requires: (1) the existence of a scheme to defraud; (2) the use of United States mails . . . to further that scheme; and (3) evidence that defendants did so with a specific intent to defraud."), *report and recommendation adopted*, 2012 WL 1432213 (E.D.N.Y. Apr. 25, 2012); *see also Red Rock Sourcing LLC v. JGX LLC*, No. 21-CV-1054, 2024 WL 1243325, at *14 (S.D.N.Y. Mar. 22, 2024) (explaining that the first element, a scheme to defraud, requires proof of "(i) the existence of a scheme to defraud, (ii) the requisite scienter (or fraudulent intent) on the part of the defendant, and (iii) the materiality of the misrepresentations" (quoting *United States v. Autuori*, 212 F.3d 105, 115 (2d Cir. 2000))). While "the mail or wire communications themselves need not contain a false statement . . . a plaintiff still needs to allege a material misrepresentation as part of the defendants' scheme to fraud to state a violation of section 1341 or 1343." *Williams*, 889 F.3d at 125; *see Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 488 (2d Cir. 2014) ("Although the mailed or wired communication need not itself be fraudulent . . . it must . . . be made in furtherance of the fraudulent scheme."); *Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 125 (S.D.N.Y. 2023) (quoting *Crawford*, 758 F.3d at 488).

Moreover, "mail fraud schemes do not require a defendant to know about the specific mailing" but require a showing that the defendant "acted with knowledge that the use of the mails will follow in the ordinary course of business, or that such use can reasonably be foreseen,

even though not actually intended." *United States v. Rutigliano*, 790 F.3d 389, 397 (2d Cir. 2015) (quoting *United States v. Tocco*, 135 F.3d 116, 124 (2d Cir. 1998)); *see Red Rock Sourcing*, 2024 WL 1243325, at *14 (stating that under the mail and wire fraud statutes "a plaintiff need not allege 'that the defendants have personally used the mails or wires; it is sufficient that a defendant causes the use of the mails or wires'" (quoting *Sobel v. Fleck*, No. 03-CV-1041, 2003 WL 22839799, at *6 (S.D.N.Y. Dec. 1, 2003), *report and recommendation adopted*, 2004 WL 48877 (S.D.N.Y. Jan. 8. 2004))); *Allstate Ins. Co. v. New Cent. Pharm. Inc.*, No. 19-CV-5702, 2021 WL 7830141, at *8 (E.D.N.Y. Aug. 13, 2021) ("To properly allege the 'use of interstate mails,' the plaintiff need not allege that each defendant sent a piece of mail; rather, 'it need only be shown that [each defendant] acted with knowledge that the use of the mails will follow in the ordinary course of business, or that such use can reasonably be foreseen, even though not actually intended.'" (alteration in original) (quoting *Allstate Ins. Co. v. Nazarov*, No. 11-CV-6187, 2015 WL 5774459, at *12 (E.D.N.Y. Sep. 30, 2015))), *report and recommendation adopted*, Order Adopting Report and Recommendation (E.D.N.Y. Mar. 24, 2022).

Allegations of mail fraud are governed by Rule 9(b) of the Federal Rules of Civil Procedure and must be pled with particularity. *See Sullivan*, 149 F.4th at 221 ("[The Second Circuit] ha[s] long held that RICO claims premised on predicate acts that sound in fraud, including wire fraud, must satisfy the heightened pleading standards of Rule 9(b)."); *Williams*, 889 F.3d at 124 ("The elements of mail and wire fraud must be pled with particularity."); *Babb v. Capitalsource, Inc.*, 588 F. App'x 66, 68 (2d Cir. 2015) (discussing pleading requirements under RICO for fraudulent predicate acts); *Curtis v. L. Offs. of David M. Bushman, Esq.*, 443 F. App'x 582, 584 (2d Cir. 2011) (same); *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185

(2d Cir. 2008) (same); *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006) (same). As the Second Circuit has explained, "Rule 9(b) serves several purposes. '[I]t is designed to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit.'" *Miller v. U.S. ex rel. Miller*, 110 F.4th 533, 544 (2d Cir. 2024) (alteration in original) (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)). "It also discourages plaintiffs from using the litigation process to discover hypothetical wrongdoing." *Id.* (citing *Madonna v. United States*, 878 F.2d 62, 66 (2d Cir. 1989)). "'Bare-bones allegations' therefore do not suffice." *McNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 99 (2d Cir. 2023) (quoting *Lundy*, 711 F.3d at 119).

To meet the heightened Rule 9(b) pleading standard, "[a]llegations of predicate [mail and] wire fraud acts should state the contents of the communications, who was involved, [and] where and when they took place, and [should] explain why they were fraudulent." *Sullivan*, 149 F.4th at 221 (second alteration added) (quoting *Spool*, 520 F.3d at 185); *Farag v. XYZ Two Way Radio Serv., Inc.*, No. 22-1795, 2023 WL 2770219, at *1 (2d Cir. Apr. 4, 2023) (summary order) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993)); *Williams*, 889 F.3d at 124 (citing *Mills*, 12 F.3d at 1175); *Spool*, 520 F.3d at 185 (quoting *Mills*, 12 F.3d at 1176); *see also Purchase Real Est. Grp. v. Jones*, No. 05-CV-10859, 2010 WL 3377504, at *8 (S.D.N.Y. Aug. 24, 2010) ("Under Rule 9(b), allegations of fraud in the RICO context must be made with particularity and must 'specify the statements [plaintiffs] claim [ ] were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for

the statements.'" (alterations in original) (quoting *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 172–73 (2d Cir. 1999))).

Where multiple defendants accused of mail or wire fraud, plaintiffs "need to allege at least two predicate acts of wire fraud 'as to each individual defendant.'" *Sullivan*, 149 F.4th at 222 (quoting *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001)); *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 117 (2d Cir. 2023) ("[A] complaint alleging fraud committed by multiple defendants 'should inform each defendant of the nature of his alleged participation in the fraud.'" (quoting *DiVittorio v. Equidyne Extractive Indus.*, 822 F.2d 1242, 1247 (2d Cir. 1987))); *DeFalco*, 244 F.3d at 306 ("The requirements of section 1962(c) must be established as to each individual defendant."); *Mondelus v. August W. Dev., LLC*, No. 19-CV-4832, 2022 WL 182363, at *7 (E.D.N.Y. Jan. 20, 2022) ("[W]here . . . 'multiple defendants are accused of mail and wire fraud, the plaintiff must particularize and prove each defendant's participation in the fraud as well as each defendant's involvement in the two necessary predicate acts.'" (quoting *GWG MCA Cap., Inc. v. Nulook Cap., LLC*, No. 17-CV-1724, 2020 WL 10508196, at *8 (E.D.N.Y. June 28, 2020))); *J.T. v. de Blasio*, 500 F. Supp. 3d 137, 170 (S.D.N.Y. 2020) ("Where multiple defendants are accused of mail or wire fraud, plaintiffs must plead [with] particularity as to each defendant . . . ." (quoting *U.S. Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 443–44 (S.D.N.Y. 2004))), *aff'd in part, appeal dismissed in part sub nom. K.M. v. Adams*, No. 20-4128, 2022 WL 4352040 (2d Cir. Aug. 31, 2022) (summary order); *United Limousine Serv.*, 303 F. Supp. 2d at 444 (quoting *Allen v. New World Coffee, Inc.*, No. 00-CV-2610, 2001 WL 293683, at *4 (S.D.N.Y. Mar. 27, 2001)).

A plaintiff need not allege that each defendant itself made a misrepresentation, but rather must allege sufficient facts showing each defendant's knowing or intentional participation in the

alleged scheme to defraud. *See Edmondson v. Raniere*, No. 20-CV-485, 2025 WL 2590385, at *5 n.9 (E.D.N.Y. Sep. 8, 2025) ("But when a RICO plaintiff alleges a mail or wire fraud predicate, she need not allege that a given defendant made the challenged misstatement, so long as she alleges sufficient facts showing that defendant's 'knowing or intentional participation' in a scheme to defraud." (quoting *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996))); *Hagigi v. Yukhananov*, No. 23-CV-5549, 2024 WL 4028333, at *4 (E.D.N.Y. Sep. 3, 2024) ("Plaintiffs need not allege that each defendant itself made a misrepresentation, but rather must allege sufficient facts showing each defendant's knowing or intentional participation in the alleged scheme to defraud."); *Paul Hobbs Imps. Inc. v. Verity Wines LLC*, No. 21-CV-10597, 2023 WL 374120, at *4 (S.D.N.Y. Jan. 24, 2023) ("[A] complaint adequately alleges each defendant's commission of mail or wire fraud 'as long as [it] allege[s] sufficient facts showing each defendant's knowing or intentional participation in the alleged scheme to defraud.'" (second and third alterations in original) (quoting *Williams v. Equitable Acceptance Corp.*, 443 F. Supp. 3d 480, 492 (S.D.N.Y. 2020))); *see also Red Rock Sourcing*, 2024 WL 1243325, at *15 ("'Although Rule 9(b) permits knowledge to be averred generally, plaintiffs must still plead the events which they claim give rise to an inference of knowledge.' A sufficient factual basis for fraudulent intent may consist of allegations as to who 'possessed . . . knowledge' of the fraud, 'when and how they obtained [that] knowledge,' or even why they 'should have known' of the fraud." (alterations in original) (quoting *Devaney v. Chester*, 813 F.2d 566, 568 (2d Cir. 1987))).

"To establish the existence of a RICO conspiracy, a plaintiff must prove 'the existence of an agreement to violate RICO's substantive provisions.'" *Cofacrèdit*, 187 F.3d at 244 (quoting *United States v. Sessa*, 125 F.3d 68, 71 (2d Cir. 1997)); *see* 18 U.S.C. § 1962(d) (stating that a

person violates the statute if he or she "conspire[s] to violate any of the" RICO provisions); *Jordan v. Tilzer*, No. 21-1938, 2022 WL 16544335, at *2 (2d Cir. Oct. 31, 2022) (summary order) (quoting *Sessa*, 125 F.3d at 71); *Onoufriadis*, 2021 WL 4452070, at *1 (quoting *Williams*, 889 F.3d at 124); *Morin v. Trupin*, 835 F. Supp. 126, 136 (S.D.N.Y. 1993) (stating that to establish a RICO civil conspiracy claim, "[t]he complaint [ ] must specifically allege [ ] an agreement" to "commit predicate acts"). Furthermore, a plaintiff must demonstrate that a defendant "understood the scope of the enterprise and knowingly agreed to further its affairs through the commission of various offenses." *Morin*, 835 F. Supp. at 136 (quoting *Morin v. Trupin*, 747 F. Supp. 1051, 1067 (S.D.N.Y. 1990)); *see Infinity Health Prods.*, 2012 WL 1427796, at *7 (citing *id.*). This requirement may be satisfied by showing that a defendant "possessed knowledge of only the general contours of the conspiracy." *Gov't Emps. Ins. Co. v. Hollis Med. Care, P.C.*, No. 10-CV-4341, 2011 WL 5507426, at *10 (E.D.N.Y. Nov. 9, 2011) (quoting *United States v. Applins*, 637 F.3d 59, 75 (2d Cir. 2011)).

When a plaintiff relies on the same factual predicate to plead both a substantive RICO violation and conspiracy claim, if the plaintiff fails to adequately plead a substantive RICO claim, the plaintiff cannot adequately plead a conspiracy claim. *See Curtis*, 2023 WL 6324324, at *2 (explaining that a "RICO conspiracy claims fail when the 'alleged conspiracy involved an agreement to commit the same substantive RICO violations the [c]ourt has deemed insufficiently pled'" (alteration omitted) (quoting *Williams*, 889 F.3d at 126)); *Zamora v. FIT Int'l Grp. Corp.*, 834 F. App'x 622, 626 (2d Cir. 2020) ("[The p]laintiffs' failure to state a claim for a substantive RICO violation is fatal to their RICO conspiracy claim under § 1962(d), given that [the p]laintiffs rely on the same factual predicate to plead both the substantive RICO violation and the conspiracy claim . . . ."); *Smulley v. Fed. Hous. Fin. Agency*, 754 F. App'x 18, 24 (2d Cir. 2018)

(holding, in the federal RICO context, that "without a sufficiently pleaded substantive RICO violation under 18 U.S.C. § 1962(c), [a] conspiracy claim under 18 U.S.C. § 1962(d) fails as well"); *Lynn*, 760 F. App'x at 54 ("[The plaintiffs'] failure to plead a substantive RICO claim under 18 U.S.C. § 1962(c) necessarily defeats their conspiracy claim under 18 U.S.C. § 1962(d)."); *Williams*, 889 F.3d at 126 (concluding that the plaintiffs' RICO conspiracy claim fails where "[t]he alleged conspiracy involved an agreement to commit the same substantive RICO violations [the court] ha[s] deemed insufficiently pled, and the plaintiffs have not alleged any further acts that, if carried out, would have satisfied RICO's requirement of a pattern of racketeering"). To plead a RICO conspiracy, "a plaintiff must allege 'the existence of an agreement to violate RICO's substantive provisions.'" *Williams*, 889 F.3d at 124 (quoting *Sessa*, 125 F.3d at 71); *Hubbuch v. Cap. One, N.A.*, No. 25-CV-406, 2025 WL 1983218, at *7 (S.D.N.Y. June 11, 2025) (quoting *Cofacrèdit*, 187 F.3d at 244), *report and recommendation adopted*, 2025 WL 1934472 (S.D.N.Y. July 15, 2025); *Nygård v. Bacon*, No. 19-CV-1559, 2021 WL 3721347, at *3 (S.D.N.Y. Aug. 20, 2021) ("If a complaint fails to state a substantive RICO claim, it also does not state a claim for RICO conspiracy.").

**i. Substantive RICO claim**

Defendants argue that the Court should dismiss Travelers' substantive RICO claim because it fails to plausibly allege a RICO claim, or allege it with the required specificity. (Defs.' Mem. 22–28.) First, Defendants contend that Travelers fails to plead a cognizable RICO enterprise because it does not satisfy the "distinctness" requirement pursuant to RICO. (*Id.* at 7–12; Defs.' Reply 4–6.) Second, Defendants argue that even if Travelers pleaded a cognizable RICO enterprise, its RICO claim fails to plead that the Individual Defendants personally committed a predict act under RICO. (Defs.' Mem. 24–28.)

Travelers argues that it sufficiently states its substantive RICO claim. First, Travelers contends that it sufficiently satisfies the "distinctness" requirement. (Pls.' Opp'n 20–22.) Second, Travelers argues that it sufficiently pleads the Individual Defendants' conduct and participation in the fraudulent scheme. (*Id.* at 24–28.)

**1. Travelers has not sufficiently pleaded an enterprise**

Defendants argue that the Court should dismiss Travelers' RICO claims because it fails to establish that EMSI is an enterprise, the first element of a RICO claim. In support, Defendants contend that Travelers' allegations against the Individual Defendants describes "a business operating in a highly regulated industry and acting through its executives." (Defs.' Reply 5.) Defendants therefore argue that "the alleged pattern of alleged racketeering activity is not pleaded as being distinct from the alleged enterprise itself." (*Id.* at 6.)

Travelers argue that it sufficiently pleads a "legal-entity enterprise consisting of EMSI (a legitimate corporate entity), through which the Individual Defendants conducted racketeering activity." (Pls.' Opp'n 20.) In support, Travelers contends that "[w]here the alleged enterprise is a legal entity and the participant [d]efendants are distinct natural persons, as is the case in this matter, the distinctness requirement is easily satisfied." (*Id.* at 22.)

Travelers fails to establish an "enterprise." Travelers argues that the RICO "enterprise" is EMSI and the RICO "persons" are the Individual Defendants, (*see* Pls.' Opp'n 22), and alleges that the Individual Defendants "participated in the operation and management of the EMSI enterprise," (Am. Compl. ¶ 44), "with the intent to bill Travelers (and other similarly-situated insurers) for false and fraudulent DME," (Pls.' Opp'n 13). Travelers fails to show that the RICO "enterprise," EMSI, is sufficiently distinct from the RICO "person," the Individual Defendants, because the Individual Defendants were acting within the scope of their corporate roles, and Travelers therefore fails to establish an enterprise. *See Cruz*, 720 F.3d at 120–21 (finding no

enterprise where the plaintiff alleged that that the RICO enterprise consisted, *inter alia*, of the company-defendant, its chief operating officer, and its managing director and corporate counsel, who carried out the regular affairs of the company-defendant); *Palomino Master Ltd.*, 2026 WL 848394, at *11–12 (finding no enterprise where the plaintiffs alleged "no association with any entity outside [the corporation-defendant], no structure separate from the corporation itself, and no purpose distinct from the corporation's own business" because "[a] corporation acting together with its own officers and agents, within the scope of their corporate roles, does not constitute an enterprise separate from the corporation itself"); *Orrego v. Pasternack Tilker Ziegler Walsh Stanton & Romano LLP*, No. 23-CV-6507, 2026 WL 124813, at *4 (E.D.N.Y. Jan. 16, 2026) (finding no enterprise where the amended complaint names the company as a defendant and does not allege any other entity or group as an enterprise), *appeal dismissed*, No. 25-2234, 2026 WL 1296235 (2d Cir. Apr. 24, 2026); *Reca v. Flashdot Ltd.*, No. 24-CV-6316, 2026 WL 82702, at *9 (S.D.N.Y. Jan. 12, 2026) (finding no enterprise where the plaintiffs failed to sufficiently allege that the defendants formed an enterprise separate and distinct from the corporation); *Long v. Zhuang*, No. 22-CV-1293, 2024 WL 4250308, at *10 (E.D.N.Y. Aug. 8, 2024) ("[T]he defendants cannot be grouped together for the sole reason that they all allegedly had [involvement] in the alleged acts . . . [the p]laintiffs' failure to distinguish between the enterprise and its alleged illegal acts is fatal to the RICO claims." (first alteration in original) (citation omitted)), *report and recommendation adopted*, Order Adopting Report and Recommendation (E.D.N.Y. Sep. 16, 2024); *cf. Premium Merch. Funding 26*, 2026 WL 867165, at *12 (finding an enterprise where the corporation worked with another closely related entity to "engage[] in a coordinated scheme of fraudulent lending and unlawful debt collection"); *Gov't Emps. Ins. Co. v. J Flexible Corp.*, No. 25-CV-6700, 2026 WL 743292, at *7 (E.D.N.Y. Mar. 17,

2026) (finding an enterprise where the individual defendant "controlled the two [durable medical equipment] supplier defendants" that make up the enterprise); *Allstate Ins. Co. v. Geykhman*, No. 24-CV-4580, 2025 WL 2576749, at *2, 8 (E.D.N.Y. Sep. 7, 2025) (finding an enterprise where the plaintiff alleged a "tripartite grouping[]" of defendants involving (1) "a network of fraudulently incorporated professional corporations," (2) owned by licensed physical therapists who were (3) managed by non-licensed laypersons), *report and recommendation adopted*, Order Adopting Report and Recommendations (E.D.N.Y. Feb. 19, 2026).

Travelers' reliance on *Cedric Kushner*[10] to argue that it has "easily satisfied" the distinctness requirement, (*see* Pls.' Opp'n 22 (quoting 533 U.S. at 161)), is unpersuasive because "the Supreme Court emphasized that its holding [in *Cedric Kushner*] was limited to the circumstances in which 'a corporate employee unlawfully conducts the affairs of the corporation of which he is the sole owner — whether he conducts those affairs within the scope, or beyond the scope, of corporate authority.'" *U1it4less*, 871 F.3d at 207–08 (quoting *Cedric Kushner*, 533 U.S. at 166). In other words, distinctness for the purposes of RICO can be satisfied when the RICO "person" is the "sole owner" of a corporation and the "enterprise" is the same corporation. *See Cedric Kushner*, 533 U.S. at 161. The Supreme Court's analysis is inapplicable here because Travelers does not allege that the RICO "person" is *only* Garcia, the "sole owner" of EMSI. Instead, Travelers alleges that Garcia *and* the remaining Individual Defendants —

[10] *Cedric Kushner* involved "a person who is the president and sole shareholder of a closely held corporation." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 160 (2001). The plaintiff alleged that (1) the defendant was the RICO "person" and (2) the defendant's company was the RICO "enterprise," for which the defendant was the president and sole shareholder. *Id.* The Supreme Court concluded that distinctness was satisfied where "a corporate employee unlawfully conducts the affairs of the corporation of which he is the sole owner — whether he conducts those affairs within the scope, or beyond the scope, of corporate authority." *Id.* at 166.

Muley, Dacey-Zavalianos, and Alfonso — are the RICO "person[s]." Therefore, in alleging four RICO "persons," of which only one is an owner of EMSI, Travelers fails to satisfy the distinctiveness requirement for the purposes of RICO because, as discussed above, distinctness cannot be satisfied when the enterprise consists of a corporation and its own agents acting within the scope of their corporate roles. *See U1it4less*, 871 F.3d at 206–09 (stating that an enterprise is not distinct from the persons where the alleged RICO persons "operate within a unified corporate structure" and are "guided by a single corporate consciousness" (quoting *Cruz*, 720 F.3d at 121)); *Palomino Master Ltd.*, 2026 WL 848394, at *11 (concluding that the plaintiffs failed to meet the distinctness requirement where the plaintiffs "allege no association with any entity outside [of the corporation-defendant], no structure separate from the corporation itself, and no purpose distinct from the corporation's own business" because "even if an enterprise is distinct from the pattern of racketeering activity, a claim still fails if the enterprise is not distinct from the defendant 'person'"); *DarkPulse, Inc. v. EMA Fin., LLC*, No. 22-CV-45, 2023 WL 2307386, at *4 (S.D.N.Y. Mar. 1, 2023) (collecting cases that rejected RICO claims where the alleged RICO "enterprise" was "a corporation associating with its own employees or a related corporate entity that functionally acted as a single unit with the RICO 'person'"); *cf. Lateral Recovery LLC v. Funderz.net, LLC*, No. 22-CV-2170, 2024 WL 4350369, at *24 (S.D.N.Y. Sep. 27, 2024) (stating that the distinctness requirement would not be violated where the RICO "person" is the owner and manager of the RICO "enterprise").

Because Travelers fails to establish an enterprise, which is the first prong of a RICO claim, its RICO claim pursuant to 18 U.S.C. § 1962(c) fails.[11]

[11] Although the Court finds that Travelers fails to establish an "enterprise," the Court nevertheless addresses whether Travelers establishes "a pattern of racketeering activity." *See Reich v. Lopez*, 858 F.3d 55, 59 (2d Cir. 2017) (stating that 18 U.S.C. §§ 1962 and 1964

### 2. Travelers has not sufficiently pleaded that the Individual Defendants participated in the alleged scheme to defraud Travelers

Defendants argue that Travelers fails to sufficiently plead that the "the Individual Defendants personally committed two or more acts of 'racketeering activity,'" (Defs.' Mem. 25), because: (1) Travelers "merely identified the Individual Defendants from the EMSI website and the NY Medicaid Provider application and proceeded to find publicly available information . . . to create conclusory allegations" in the Amended Complaint that the Individual Defendants, "collectively and without differentiation, committed the elements of fraud and RICO, including RICO predicate acts," (*id.* at 28); (2) "[a]llegations specific to any of the Individual Defendants merely describe innocent conduct in the ordinary course of business," (*id.*); (3) "the allegations particular to the Individual Defendants consist of a handful of benign facts derived from readily available sources that merely describe ordinary business responsibilities," (*id.* at 27); and (4) the "allegations [ ] advanc[ing] the 'naked assertion' that the Individual Defendants actively participated in fraud . . . are pure speculation devoid of the essential 'factual enhancement,'" (*id.* at 26).

Travelers argues that it has sufficiently pleaded with particularity that the Individual Defendants participated in the alleged scheme to defraud travelers. (Pls.' Opp'n 22.) In support, Travelers contends that the Amended Complaint "alleges that each Individual Defendant occupied a position of authority within EMSI[] and knowingly participated in directing the scheme alleged," as it alleges "each Individual Defendants' responsibilities" and how "each Individual Defendant was a member of the EMSI executive team that designed, implemented, and oversaw the corrupt LOMN protocol." (*Id.* at 25.)

---

"imposes liability on individuals working for an 'enterprise' that commits certain predicate crimes that amount to a 'pattern of racketeering activity'" (quoting 18 U.S.C. §§ 1962, 1964)).

Travelers sufficiently alleges with particularity the existence of a scheme to defraud. First, Travelers specifies the false or misleading statements, which are the misrepresentations and omissions regarding EMSI's eligibility for and entitlement to reimbursement of benefits under the (1) no-fault regulations of New York, Florida, Georgia, and Pennsylvania and (2) workers' compensation regulations of New York, Florida, Pennsylvania, and Georgia. Second, Travelers identifies EMSI as responsible for the statements. Third, Travelers states when and where the statements were made, which are (1) from 2014 to the present and (2) in claims and supporting documentation mailed to Travelers. Finally, Travelers explains why these statements are fraudulent — the reimbursement claims were for TENS/NMES Devices and supplies that were unlawful, unnecessary, medically worthless, billed pursuant to a predetermined treatment protocol, and fraudulently billed.

However, Travelers fails to sufficiently establish the Individual Defendants' knowing and intentional participation in the scheme. Travelers alleges in the Amended Complaint that the Individual Defendants were members of an "executive team" that created the LOMN and its policies, (*see* Am. Compl. ¶¶ 107, 110), however, this allegation is insufficient to establish the Individual Defendants' knowing and intentional participation in the scheme because Travelers does not provide any particularized facts as to the role of the Individual Defendants in creating the LOMN and its policies.

In addition, Travelers' sole allegations particularized to each Individual Defendant are general allegations of their titles and responsibilities at EMSI that do not plausibly link any of the alleged fraudulent conduct to the Individual Defendants. First, Travelers alleges that Muley, as EMSI's president, "was responsible for the operational efficiency and integrity of EMSI, including the company's adherence to billing regulations." (*Id.* ¶ 64.) Second, Travelers alleges

that Alfonso, as EMSI's Executive Vice President of Finance, "necessarily had to approve the procedures for billing and collection" of fraudulent bills mailed to Travelers, (*id.* ¶¶ 88, 1016), by virtue of his creation and enforcement of "the internal mechanisms governing how sales were recorded, claims were submitted, and revenue was recognized," (*id.* ¶ 85). Third, Travelers alleges that Dacey-Zavalianos, as EMSI's Executive Vice President of Operations, directly oversaw billing and accounts receivables and "routinely analyzed billings to insurance company payors and enforced EMSI billing protocols." (*Id.* ¶¶ 74, 952.) Finally, Travelers alleges that Garcia, as founder, chairman, and owner of EMSI, had sole control over EMSI's bank account, participated in developing and executing EMSI's business and marketing strategy, convened EMSI's management team, and is listed as the authorized official on EMSI National Provider ID and the National Provider ID is listed on every fraudulent claim. (Pls.' Opp'n 13–14.) These allegations amount to generic allegations of routine business responsibilities from which it would be speculative to conclude that the Individual Defendants directed the alleged scheme or had any direct role in, or knowledge of, the scheme.[12] *See Lynn v. McCormick*, No. 17-CV-1183, 2017 WL 6507112, at *6 (S.D.N.Y. Dec. 18, 2017) (concluding that the plaintiffs failed to plead a plausible RICO claim against the CEO of a bank that was alleged to be part of an enterprise that forced the plaintiffs into loans and subsequent defaults because there were no allegations that the CEO "committed, or had anything to do with, any of the allegedly fraudulent acts"), *aff'd*, 760 F. App'x 51 (2d Cir. 2019); *cf. Aghaeepour v. N. Leasing Sys., Inc.*, No. 14-CV-5449, 2015 WL 7758894, at *6 (S.D.N.Y. Dec. 1, 2015) (concluding allegations of a fraudulent scheme that

---

[12] The Court does not address Travelers' remaining allegations regarding (1) EMSI's strategic plan, (Am. Compl. ¶ 935), and (2) settlements of False Claims Act allegations, (*id.* ¶¶ 731–32), because these allegations were also in the Complaint and the Court previously found these allegations unpersuasive in the September 2025 Decision. (*See* Sep. 2025 Decision 43–45.)

"stem[med] from the origination of leases" sufficiently pleaded the participation of the corporate defendant's vice president of operations because in addition to providing the defendant's job title, the complaint "demonstrate[d] [his] participation in the scheme" including that he "[was] responsible for day-to-day operations and lease originations"), *order corrected on other grounds on denial of reconsideration*, 2016 WL 828130 (S.D.N.Y. Feb. 25, 2016); *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 140–48 (S.D.N.Y. 2014) (finding that the plaintiffs stated RICO claims against an officer and a "controlling person[]" of a company that forged small business equipment leases and "bull[ied]" out-of-state plaintiffs into paying the leases through "bogus lawsuits" because the plaintiffs "specifically allege[d] the role each [i]ndividual [d]efendant played in the scheme" including that the vice president of operations "verified complaints filed" in the bogus lawsuits and held responsibility for "several aspects" of the "day-to-day operations, lease originations, and sales" and the legal administrative manager "verified and notarized complaints" and mailed the summons and complaint to a named plaintiff (internal citations omitted)).

In the absence of any specific facts about the Individual Defendants beyond their titles and general descriptions of their corporate responsibilities, Travelers does not allege sufficient facts from which the Court can infer that the Individual Defendants participated in the alleged fraud. Instead, Travelers alleges that because the Individual Defendants held management positions at EMSI during the relevant period, they directly participated in or facilitated the fraudulent billing of Travelers and therefore may be held individually liable for the alleged scheme to defraud Travelers. Construing the facts in favor of Travelers, the Court cannot reasonably draw this inference. In part, Travelers' allegations demonstrate that the alleged scheme constituted a minority of EMSI's business. Travelers' allegations in the Amended

Complaint regarding violations occurring in New York, Pennsylvania, Florida, and Georgia, do not allege that EMSI's business in these states consisted solely of the DME and replenishment supplies which were sold to patients that Travelers insured. Rather, Travelers only alleges that thirty-five percent of EMSI's business is derived from the New York market, (Am. Compl. ¶ 100), which the Court previously concluded was insufficient to establish that all or the majority of EMSI's business is derived from the illegitimate or fraudulent activities involved in the scheme to defraud Travelers, and Travelers does not otherwise provide any information regarding what percentage of EMSI's business is derived from the markets in Pennsylvania, Florida, and Georgia. In view of Rule 9(b)'s purposes "to safeguard a defendant's reputation from improvident charges of wrongdoing," "to protect a defendant against the institution of a strike suit," and "discourage[] plaintiffs from using the litigation process to discover hypothetical wrongdoing," *Miller*, 110 F.4th at 544, the Court declines to infer solely on the basis of the Individual Defendants' management positions at EMSI that they participated in or directed the scheme to defraud Travelers. *See Sanchez v. ASA Coll., Inc.*, No. 14-CV-5006, 2015 WL 3540836, at *6 (S.D.N.Y. June 5, 2015) (explaining that "a plaintiff may not rely solely upon [the] defendants' 'positions of control' in an enterprise, and may not link individual defendants to fraudulent activities 'by stating only that [the d]efendants were officers and shareholders' of the organization'" to "inform each defendant of the nature of his alleged participation in the fraud"); *see also City of Brockton Ret. Sys. v. Avon Prods., Inc.*, No. 11-CV-4665, 2014 WL 4832321, at *20 (S.D.N.Y. Sep. 29, 2014) (rejecting the plaintiffs argument that the individual defendants should have been aware of certain alleged "corrupt . . . events . . . because of their supervisory positions" as "generalized allegations founded solely on an individuals' corporate position are not sufficient to demonstrate scienter"); *cf. CPM Med Supply Inc.*, 2024 WL

3949968, at *2 (finding that the plaintiff insurer sufficiently alleged the individual defendant's engagement in a RICO scheme to defraud the insurer into paying claims for fraudulently prescribed post-surgical rehabilitation durable medical equipment devices issued by the corporate defendant, a medical supplier, where the insurer alleged that the individual defendant was "the principal, officer, and/or director of [the durable medical equipment supplier], operating, managing and controlling its activities" and that he formed the durable medical equipment supplier "to engage in a scheme whereby [he] paid kickbacks to [the] [clinics] in exchange for prescriptions of [durable medical equipment]"); *Aghaeepour*, 2015 WL 7758894, at *6 (concluding that while "the [c]omplaint contain[ed] a number of allegations against all [the d]efendants in general, the [c]omplaint's other allegations specific to each [d]efendant" including their job titles and "how their individual responsibilities demonstrate[d] their participation in the scheme" were sufficient to accomplish the goals of Rule 9(b)).

Because Travelers fails to plausibly allege (1) an "enterprise" and (2) the Individual Defendants' participation in the alleged scheme to defraud it, the Court dismisses the substantive RICO claims predicated on the EMSI Enterprise and the Individual Defendants.[13]

**ii. RICO conspiracy claim**

Defendants argue that the Court should dismiss Travelers' RICO conspiracy claim because it arises from the same facts as Travelers' RICO claim. (Defs.' Mem. 29.)

Travelers argues that it sufficiently alleges RICO conspiracy because the Amended Complaint "contains specific allegations of wrongdoing against each Individual Defendant/member of the executive team in conducting the affairs of the EMSI enterprise." (Pls.'

---

[13] Having found that Travelers fails to establish the first and second prongs of a RICO claim, the Court does not address the parties' arguments regarding whether Travelers adequately pleaded the remaining two prongs.

Opp'n 31.)

As discussed *supra* Section II.c.i, Travelers has not adequately alleged a substantive RICO claim against Defendants. Travelers bases its conspiracy claims on the Individual Defendants' participation in the "operation and management of the EMSI enterprise" through "a pattern of racketeering activity, including numerous acts of mail fraud . . . and/or submission of fraudulent insurance claim documents . . . to Travelers." (Am. Compl. ¶¶ 44, 1092.) Thus, Travelers' "alleged conspirac[ies] involved an agreement to commit the same substantive RICO violations [the Court has] deemed insufficiently pled," *Williams*, 889 F.3d at 126, and it does not assert allegations or events separate from those underlying the substantive RICO claims for the RICO conspiracy claim.

Accordingly, the Court dismisses the RICO conspiracy claims against Defendants. *See, e.g.*, *Curtis*, 2023 WL 6324324, at *2 (dismissing the plaintiffs' conspiracy claim where they had not stated a substantive RICO claim); *First Cap. Asset Mgmt.*, 385 F.3d at 182 (same); *Chester Park View, LLC v. Schlesinger*, No. 23-CV-5432, 2024 WL 2785140, at *12 (S.D.N.Y. May 29, 2024) (same); *Anglin Auto. LLC v. EBF Holdings, LLC*, No. 23-CV-1404, 2024 WL 1118892, at *9 (S.D.N.Y. Mar. 14, 2024) (same); *Verity Wines LLC*, 2023 WL 374120, at *13 (same).

**d. Common law fraud claims**

Defendants first, argue that the Court should dismiss the common law fraud claims brought under New York, Florida, Pennsylvania, and Georgia law because Travelers fails to establish that the Individual Defendants committed fraud.[14] (Defs.' Mem. 29.) Second,

---

[14] The Court notes that the Amended Complaint alleges common-law fraud violations against all Defendants. (*See* Am. Compl. ¶¶ 1097–1138.) Defendants move to dismiss the common-law fraud claims against the Individual Defendants, arguing that Travelers fails to establish that their actions constitute fraud. (Defs.' Mem. 29.) As to EMSI, Defendants move to dismiss the Pennsylvania, Florida, and Georgia common-law fraud claims against it arguing that

Defendants argue that the Court should decline supplemental jurisdiction over Travelers' fraud claims arising under Florida, Pennsylvania, and Georgia law because Travelers fails to allege a common nucleus of operative fact. (*Id.* at 31–33; Defs.' Reply 14.) In support, Defendants contend that Travelers' argument that it has established jurisdiction because the Amended Complaint "arose as a result of a single nationwide scheme" fails because Travelers does not dispute the existence of a "'national' billing regulatory system when it comes to worker's compensation and automobile medical insurance claims that have always been the province of state law."[15] (Defs.' Reply 14 (emphasis omitted) (quoting Pls.' Opp'n 34).) Third, Defendants

---

the Court lacks jurisdiction over them. (*Id.* at 31.) EMSI does not seek to dismiss the New York fraud claim.

[15] As discussed *supra* footnote 4, Travelers invokes both federal question and diversity jurisdiction. The Amended Complaint includes facts demonstrating diversity. First, Travelers satisfies the amount-in-controversy requirement because it "seeks actual damages in excess of $1,254,402.98," (Am. Compl. ¶ 35). Second, Travelers satisfies the citizenship requirement because: (1) each of Travelers' companies is duly organized and exists under the laws of the State of Connecticut and has its principal place of business in Hartford Connecticut, except for Fidelity and Guaranty Insurance Underwriters, Inc., which is duly organized and exists under the laws of the State of Wisconsin, (*id.* ¶¶ 38–40); (2) EMSI is a registered Florida corporation with its principal place of business in Tampa, Florida, (*id.* ¶¶ 41–42); and (3) all of the Individual Defendants reside in and are citizens of Florida, (*id.* ¶¶ 47, 60, 69, 80). *See* 28 U.S.C. § 1332(a) (providing that original jurisdiction requires that "the matter in controversy" (1) "exceeds the sum or value of $75,000" and (2) "is between citizens of different [s]tates"); *Home Depot U. S. A., Inc. v. Jackson*, 587 U.S. 435, 437 (2019) (quoting *id.*)); *see Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124, 126 (2d Cir. 2020) (per curiam) ("Section 1332 requires 'complete diversity,' meaning that 'all plaintiffs must be citizens of states diverse from those of all defendants.'" (quoting *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 118 (2d Cir. 2014))); *Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 48 (2d Cir. 2012) ("For diversity purposes, a corporation is considered a citizen of the state in which it is incorporated and the state of its principal place of business."); *see also Metro Found. Contractors, Inc. v. Arch Ins. Co.*, 498 F. App'x 98, 100 (2d Cir. 2012) (finding diversity jurisdiction where the parties "are citizens of different states and the amount in controversy exceeds $75,000").

As discussed below, because Travelers invokes diversity jurisdiction, it does not need to allege that its claims derive from a common nucleus of operative fact. *See Berk v. Choy*, 607 U.S. 187, 191–92 (2026) ("State-law claims are usually brought in state court. But if the parties are citizens of different [s]tates and the amount in controversy exceeds a certain threshold, a

argue that the Court should decline supplemental jurisdiction because "[e]ach claim for reimbursement is regulated by the particular state law and dispute resolution mechanisms," and the Amended Complaint fails to allege which laws in Pennsylvania, Florida, and Georgia were violated by the Individual Defendants. (*Id.* at 15.)

Travelers argues first, that it sufficiently pleads claims for common law fraud against the Individual Defendants pursuant to New York, Florida, Pennsylvania, and Georgia law because it establishes the Individual Defendants' participation in the fraudulent billing scheme. (Pls.' Opp'n 19–20.) Second, Travelers contends that the Court should not decline supplemental jurisdiction because "[i]t is readily apparent that each alleged act of mail fraud within the [Amended Complaint] arose as a result of a single, nationwide scheme." (*Id.* at 34 (emphasis omitted).)

"Under New York law, the elements of a fraud claim are 'a representation of material fact, falsity, scienter, reliance and injury.'" *Pasternack v. Lab'y Corp. of Am. Holdings*, 807 F.3d 14, 22 (2d Cir. 2015) (quoting *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 57 (1999)); *Meridian Horizon Fund, LP v. KPMG (Cayman)*, 487 F. App'x 636, 641 (2d Cir. 2012) (quoting

---

plaintiff may choose to sue in federal court."); *Emergency Physician Servs. of N.Y. v. UnitedHealth Grp., Inc.*, No. 20-CV-9183, 2021 WL 4437166, at *13 (S.D.N.Y. Sep. 28, 2021) (concluding that the court "continue[d] to have jurisdiction over [the] action" following dismissal of the plaintiff's RICO claim because "it appears the [c]ourt [ ] has diversity jurisdiction" between the parties); *Dos Santos v. Assurant, Inc.*, No. 21-CV-6368, 2021 WL 3667983, at *3 (S.D.N.Y. Aug. 17, 2021) ("Unless the [c]ourt has diversity jurisdiction of this matter, it will decline to exercise supplemental jurisdiction of Plaintiff's state law claims . . . ."); *Success Sys., Inc. v. Excentus Corp.*, 439 F. Supp. 3d 31, 51 (D. Conn. 2020) (stating that the court may have jurisdiction over state-law claims where the complaint suggests diversity of citizenship between the parties); *see also Go N.Y. Tours, Inc. v. Tour Cent. Park Inc.*, No. 19-CV-9803, 2021 WL 3721359, at *3 (S.D.N.Y. Aug. 20, 2021) ("*Absent diversity jurisdiction*, the [c]ourt may exercise supplemental jurisdiction over state law claims only if they are so related to claims in the action over which the [c]ourt has original jurisdiction 'that they form part of the same case or controversy under Article III of the United States Constitution.'" (emphasis added) (quoting 28 U.S.C. § 1367(a))).

*N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 318 (1995)); *Cargo Logs. Int., LLC v. Overseas Moving Specialists, Inc.,* 723 F. Supp. 3d 212, 226 (E.D.N.Y. 2024) ("Under New York law, the essential elements of a fraud claim include 'representation of a material existing fact, falsity, scienter, deception, and injury.'" (quoting *Manning v. Utils. Mut. Ins. Co.*, 254 F.3d 387, 400 (2d Cir. 2001))); *see Kinsella v. S. Fork Wind, LLC*, No. 25-355, 2026 WL 912590, at *3 (2d Cir. Mar. 30, 2026) (summary order) ("Under New York law, the elements of a fraud claim are a representation of material fact, falsity, scienter, reliance and injury." (quoting *Pasternack*, 807 F.3d at 22)); *Gerding v. Ljungren*, No. 23-1119, 2025 WL 3751728, at *2 (2d Cir. Dec. 29, 2025) (summary order) (quoting same); *Cortes v. 21st Century Fox Am., Inc.*, 751 F. App'x 69, 72 (2d Cir. 2018) (stating the elements of a fraudulent misrepresentation claim). "To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Pauwels v. Deloitte LLP*, 83 F.4th 171, 190–91 (2d Cir. 2023) (quoting *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 402 (2d Cir. 2015)); *Housey v. Proctor & Gamble Co.*, No. 22-888, 2022 WL 17844403, at *1 n.1 (2d Cir. Dec. 22, 2022) (summary order) (quoting same); *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 259 (2d Cir. 2021) (quoting *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006)); *see also GEM Advisors, Inc. v. Corporación Sidenor, S.A.*, 667 F. Supp. 2d 308, 333 (S.D.N.Y. 2009) ("The second element of fraud in New York is intent to defraud, or scienter, which includes knowledge of the falsity of the representation." (citing *Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995))).

"Under Florida law, a common law fraud or misrepresentation claim requires: (1) a false

statement of fact, (2) known by the defendant to be false at the time it was made, and (3) made for the purpose of inducing the plaintiff to act in reliance thereon; (4) action by the plaintiff in reliance on the correctness of the representations; and (5) resulting damages to the plaintiff." *Wynfield Inns v. Edward LeRoux Grp., Inc.*, 896 F.2d 483, 490 (11th Cir. 1990); *see Malhotra v. Kumar*, No. 25-13898, 2026 WL 2474635, at *3 n.3 (11th Cir. Aug. 24, 2026) (per curiam) (quoting *Gandy v. Trans World Computer Tech. Grp.*, 787 So. 2d 116, 118 (Fla. Dist. Ct. App. 2001)); *Gov't Emps. Ins. Co. v. Quality Diagnostic Health Care, Inc.*, No. 21-10297, 2021 WL 5157535, at *2 (11th Cir. Nov. 5, 2021) (per curiam) (quoting same); *Gustin v. Bank*, 859 F. App'x 889, 891 (11th Cir. 2021) (per curiam) (quoting same); *Gallagher v. Lactalis Am. Grp., Inc.*, No. 22-CV-614, 2023 WL 6224881, at *5 (W.D.N.Y. Sep. 21, 2023) (quoting *Gustin*, 859 F. App'x at 891); *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, No. 09-MD-2058, 2013 WL 6504801, at *14 (S.D.N.Y. Dec. 11, 2013) (quoting *Rhodes v. O. Turner & Co.*, 117 So. 3d 872, 876 (Fla. Dist. Ct. App. 2013)).

"To state a fraud claim under Pennsylvania law, [p]laintiffs must allege: '(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.'" *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1161 (11th Cir. 2019) (quoting *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994)); *Norfolk S. Ry. Co. v. Pittsburgh & W. Virginia R.R.*, 870 F.3d 244, 255 (3d Cir. 2017) (quoting same); *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 256–57 (3d Cir. 2013) (quoting *EBC, Inc. v. Clark Bldg. Sys.*, 618 F.3d 253, 275 (3d Cir. 2010)); *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 417–18 (2d Cir. 2006) (quoting *Gibbs*, 647 A.2d at 889); *Ramirez v.*

*IDD Cars, LLC*, 815 F. Supp. 3d 286, 313 (S.D.N.Y. 2025) (quoting *Corle Bldg. Sys., Inc. v. Ogden Welding Sys., Inc.*, 684 F. Supp. 3d 390, 405 (W.D. Pa. 2023)).

"Under Georgia law, a fraud claim comprises the following elements: (1) that the defendant made the misrepresentation; (2) that he knew was false; (3) that he acted with the intent to deceive the plaintiff; (4) that the plaintiff justifiably relied on the misrepresentation; and (5) that the plaintiff sustained damages as the proximate result of the misrepresentations." *Deal v. Tugalo Gas Co.*, 991 F.3d 1313, 1324 n.5 (11th Cir. 2021); *see Hemispherx Biopharma, Inc. v. Mid-S. Cap., Inc.*, 690 F.3d 1216, 1234 (11th Cir. 2012) ("A claim for fraud requires proof of '1) a false representation or omission of material fact; 2) scienter; 3) intent to induce the party claiming fraud to act or refrain from acting; 4) justifiable reliance; and 5) damages.'" (quoting *Collins v. Regions Bank*, 639 S.E.2d 626, 628 (Ga. Ct. App. 2006))); *Wade Park Land Holdings, LLC v. Kalikow*, 589 F. Supp. 3d 335, 387 (S.D.N.Y. 2022) (quoting *Tischer v. Bank of Am. Corp.*, No. 12-CV-4185, 2014 WL 11822767, at *2 (N.D. Ga. Feb. 19, 2014)), *amended*, No. 21-CV-1657, 2022 WL 2479110 (S.D.N.Y. July 6, 2022), *and aff'd sub nom. In re Wade Park Land Holdings, LLC*, No. 23-591, 2024 WL 3024648 (2d Cir. June 17, 2024) (summary order).

"[I]n conjunction with the facial plausibility standard of Rule 12(b)(6)," pleadings for common law fraud claims "must satisfy the heightened pleading standard set forth in Rule 9(b)" of the Federal Rules of Civil Procedure. *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 171 (2d Cir. 2015); *see VR Glob. Partners, L.P. v. Petróleos de Venezuela, S.A.*, No. 24-1176, 2024 WL 4891271, at *3 (2d Cir. Nov. 26, 2024) (summary order); *Smith v. D'Agostino*, No. 25-CV-1265, 2025 WL 3525935, at *11 (N.D.N.Y. Dec. 9, 2025) ("A claim for common law fraud under New York law must satisfy the requirements of the heightened pleading standard under Rule 9(b) of the Federal Rules of Civil Procedure."),

*reconsideration denied*, 2026 WL 295525 (N.D.N.Y. Feb. 4, 2026); *Turk v. Rubbermaid Inc.*, No. 21-CV-270, 2022 WL 836894, at *4 (S.D.N.Y. Mar. 21, 2022) ("[F]raud claims — including common law fraud claims — are subject to the heightened pleading standard set forth in Rule 9(b)."). "Rule 9(b) requires that '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'" *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016) (alteration in original) (quoting Fed. R. Civ. P. 9(b)).

The particularity pleading requirements of Rule 9(b) "require[ ] that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Fin. Guar. Ins.*, 783 F.3d at 402–03 (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004)); *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007); *Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.*, No. 23-CV-2599, 2026 WL 783837, at *7 (E.D.N.Y. Feb. 3, 2026) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996)), *report and recommendation adopted*, Order Adopting Report and Recommendations (E.D.N.Y. Feb. 18, 2026). "In short, a plaintiff must set forth the who, what, when, where and how of the alleged fraud." *In re Hut 8 Corp. Sec. Litig.*, No. 24-CV-904, 2025 WL 2636150, at *7 (S.D.N.Y. Sep. 12, 2025) (quoting *Telenor E. Inv. AS v. Altimo Holdings & Invs. Ltd.*, 567 F. Supp. 2d 432, 441–42 (S.D.N.Y. 2008)); *U.S. ex rel. Henig v. Amazon.com, Inc.*, No. 19-CV-5673, 2025 WL 27736, at *6 (S.D.N.Y. Jan. 3, 2025) ("Put another way, Rule 9(b) 'requires that a plaintiff set forth the who, what, when, where[,] and how of the alleged fraud.'" (quoting *U.S. ex rel. Kester Novartis Pharm. Corp.*, 23 F. Supp. 3d 242, 252 (S.D.N.Y. 2014))), *aff'd*, 177 F.4th 156 (2d Cir. 2026); *Kearney v. Bayerische Motoren Werke Aktiengesellschaft*, No. 17-CV-13544, 2018 WL

4144683, at *10 (D.N.J. Aug. 29, 2018) (quoting *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009)). "Although Rule 9(b) allows for '[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally,' a plaintiff must still allege facts 'that give rise to a strong inference of fraudulent intent.'" *Red Apple 86 Fleet Place Dev., LLC v. State Farm Fire & Cas. Co.*, No. 23-1312, 2024 WL 4764060, at *3 (2d Cir. Nov. 13, 2024) (summary order) (alterations in original) (first quoting Fed. R. Civ. P. 9(b); and then quoting *Loreley*, 797 F.3d at 171). "[A] 'strong inference of fraudulent intent' [ ] 'may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *Fed. Deposit Ins. Corp. v. Fifth Third Bank, N.A.*, No. 23-209, 2023 WL 7130553, at *2 (2d Cir. Oct. 30, 2023) (summary order) (quoting *United States v. Strock*, 982 F.3d 51, 66 (2d Cir. 2020)); *see also Honeyman v. Hoyt (In re Carter-Wallace, Inc., Sec. Litig.)*, 220 F.3d 36, 39 (2d Cir. 2000) (quoting *Shields v. Citytrust Bancorp*, 25 F.3d 1124, 1128 (2d Cir. 1994)) (same).

**i. Common law fraud claims against the Individual Defendants**

Travelers bases its common law fraud claims against the Individual Defendants on the same fraudulent billing scheme that formed the basis of its RICO claims. As discussed *supra* Section II.c.i.2, Travelers sufficiently alleges with particularity: (1) the specific statements it contends are fraudulent, which are the misrepresentations and omissions regarding EMSI's eligibility for and entitlement to reimbursement of benefits; (2) who made them — EMSI; (3) where and when the statements were made — (i) from 2014 to the present and (ii) in claims and supporting documentation made to Travelers; and (4) how and why the statements are fraudulent, which is because the reimbursement claims — the fact that the TENS/NMES Devices and supplies that were unlawful, unnecessary, medically worthless, billed pursuant to a

predetermined treatment protocol, and fraudulently billed. (*See generally* Am. Compl.) However, the allegations fail to establish that the Individual Defendants participated in the scheme and are insufficient to state a fraud claim, as Travelers' allegations amount to a recitation of the Individual Defendants' positions and general responsibilities at EMSI. Likewise, Travelers' allegations regarding the Individual Defendants' involvement in the "executive team" fail to establish their participation in the alleged scheme because Travelers does not specify the Individual Defendants' responsibilities in creating and enforcing the LOMN and its policies. *See Bigsby v. Barclays Cap. Real Est., Inc.*, 298 F. Supp. 3d 708, 723 (S.D.N.Y. 2018) (dismissing common law fraud claims for the same reasons that it dismissed the federal RICO claims), *aff'd*, 841 F. App'x 331 (2d Cir. 2021); *Lima LS PLC v. PHL Variable Ins. Co.*, No. 12-CV-1122, 2013 WL 3327038, at *11, 14 (D. Conn. July 1, 2013) (dismissing common law fraud claim against the individual defendants because "[c]onsistent with the discussion relevant to the RICO claim, [the p]laintiff ha[d] not pleaded fraud with particularity with regard to the conduct by the [i]ndividual [d]efendants" as the "complaint lack[ed] specific allegations as to actual acts specific to each of the [i]ndividual [d]efendants" and appeared to "rely upon the corporate positions of the [i]ndividual [d]efendants"); *3801 Beach Channel, Inc. v. Shvartzman*, No. 05-CV-207, 2007 WL 2891119, at *7 n.1 (E.D.N.Y. Sep. 28, 2007) ("Presumably, if the RICO claim — which is predicated on allegations that the defendants engaged in a wide array of crimes beyond mere fraud — is fatally defective by reason of its failure to make sufficiently detailed averments of fraud, then the more limited state law claim which relies exclusively on such averments must likewise be defective.").

Accordingly, the Court dismisses Travelers' common law fraud claim against the Individual Defendants.

**ii. Common law fraud claims against EMSI**

Travelers asserts that the Court has jurisdiction pursuant to both federal question and diversity jurisdiction under 28 U.S.C. §§ 1331 and 1332, respectively, (Am. Compl. ¶ 91), and Defendants do not challenge Travelers' diversity jurisdiction assertion. Despite the Court's subject-matter jurisdiction pursuant to diversity, which Defendants do not challenge, Defendants argue that the Court should decline supplemental jurisdiction over the state-law fraud claims but does not explain the basis for doing so. The Court sits in diversity jurisdiction, and Defendants do not present any caselaw stating that a federal court sitting in diversity may somehow dismiss state-law claims pursuant to supplemental jurisdiction. Rather, the Court can decline exercising supplemental jurisdiction only when dismissal of a federal claim deprives it of jurisdiction, which is not the case here. *See Moody v. Northwell Health, Inc.*, No. 26-CV-283, 2026 WL 2268096, at *4 (S.D.N.Y. Aug. 5, 2026) ("A federal district court also can consider state-law claims under its diversity jurisdiction."), *appeal filed*, No. 26-2251 (2d Cir. Aug. 12, 2026); *Crumbsie v. Muhammad*, No. 26-CV-3352, 2026 WL 1622941, at *3 (S.D.N.Y. June 3, 2026) ("To bring a state law claim in federal court, a plaintiff must either allege facts demonstrating that the court has diversity of citizenship jurisdiction of the action, or, if the plaintiff asserts a viable federal claim, the court can exercise supplemental jurisdiction of the state law claims."); *Reeves v. United States*, No. 26-CV-930, 2026 WL 1192723, at *5 (S.D.N.Y. May 1, 2026) ("A federal district court can consider state law claims either under its diversity of citizenship jurisdiction or its supplemental jurisdiction."); *see also Parkes v. Bluemenfeld Dev. Grp., Ltd.*, No. 25-CV-74, 2025 WL 674149, at *2 (S.D.N.Y. Mar. 3, 2025) ("[W]hen a court determines that there is no original federal subject matter jurisdiction over the suit, as the [c]ourt has done here, it cannot exercise supplemental jurisdiction over state law claims."), *appeal dismissed*, No. 25-704 (2d. Cir. Dec. 15, 2025); *Marchant v. de Blasio*, No. 20-CV-10544, 2021 WL 4199940,

at *5 (S.D.N.Y. Sep. 15, 2021) ("Having dismissed the federal claims and given the absence of diversity jurisdiction, the [c]ourt declines to exercise supplemental jurisdiction over the state law claims.").

Defendants do not argue any other basis for the Court to dismiss the state-law claims against EMSI, and the Court, therefore, declines to dismiss these claims against EMSI.

## III. Conclusion

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss. The Court (1) grants Defendants' motion and (i) dismisses the RICO claims against the Individual Defendants and (ii) dismisses the state-law fraud claims against the Individual Defendants and (2) denies Defendants' motion to dismiss the state-law fraud claims against EMSI. The parties should proceed with discovery before the assigned Magistrate Judge on the remaining state law claims against EMSI.

Dated: September 24, 2026
Brooklyn, New York

SO ORDERED:

/s/ MKB
MARGO K. BRODIE
United States District Judge